IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| EDWARD SNOWDEN, | ) |
| Defendant, | ) |
| and | ) |
| MACMILLAN PUBLISHERS INC., *et al.*, | ) |
| Relief-Defendants. | ) |

# Exhibit C:

# NSA Secrecy Agreements

Privacy Act Statement: Auth for requesting info: 50 U.S.C. 402 note; 50 U.S.C. 403-3(c)(6); 18 U.S.C. 798; and E.O. 10450, 10865, 12333, 12958, and 12968. ...ting your SSN is O... ...NS... Routine Uses found at ...1233... and the spec... ...tion... GNSA01 and GNSA10 apply... ...formation. Information you provide will be used (principally) to docum... ...access to Protected Information and your continuing obligation not to disclose Protected Information without authorization. Your disclosure of information requested by this form is voluntary but refusal to provide information, other than your SSN, may prevent you from obtaining access to Protected Information. Refusal to provide your SSN may delay you from obtaining access to Protected Information.

NATIONAL SECURITY AGENCY
Fort George G. Meade, MD 20755-6000

# CONTRACTOR SECURITY AGREEMENT

I understand that access to Protected Information under a U.S. Government agency contract is subject to statutory requirements and penalties and involves a special trust and confidence regarding the national security. Intending to be legally bound, I hereby accept the obligations set forth in this Agreement in consideration of my being granted such access.

1. I have been advised that Protected Information is information obtained as a result of my relationship with NSA which is classified or in the process of a classification determination pursuant to the standards of Executive Order 12958, or any successor order, and implementing regulations. It includes, but is not limited to, intelligence and intelligence-related information, sensitive compartmented information *(information concerning or derived from intelligence sources and methods)*, and cryptologic information *(information concerning communications security and signals intelligence, including information which is also sensitive compartmented information)* protected by Section 798 of Title 18, United States Code.

2. I understand that the burden is upon me to determine whether information or materials within my control are considered by the NSA to be Protected information, and whether the person(s) to whom disclosure is to be made is/are authorized to receive it.

3. I understand that all Protected Information to which I may obtain access hereafter, is and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title or claim whatsoever to such information. I agree that upon demand by an authorized representative of the NSA or upon the conclusion of my authorized access to Protected Information, I shall return all material containing such Protected Information in my possession, or for which I am responsible because of such access. I understand that failure to return such materials may be a violation of Section 793 of Title 18, United States Code, and may constitute a crime for which I may be prosecuted.

4. I understand that the unauthorized disclosure of Protected Information may invoke the criminal sanctions prescribed by one or more of the following statutes - Sections 793, 794, 798, 952, and 1924 of Title 18, United States Code, and Sections 421 through 426 and 783(b) of Title 50, United States Code.

5. I understand that any breach of this Agreement by me may, in accordance with applicable law, result in termination by the NSA of my access to any or all Protected Information at any time it determines such action to be in the interest of national security.

6. I agree not to discuss matters pertaining to Protected Information except when necessary for the proper performance of my duties and only with persons who are currently authorized to receive such information and have a need-to-know.

7. I agree I will report, without delay, to my company security officer or to an NSA security representative the details and circumstances of any possible unauthorized disclosure of Protected Information or of any unauthorized person obtaining or attempting to obtain Protected Information.

8. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action may be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

9. I agree that I will submit for security review in accordance with NSA/CSS Regulation 10-63, "NSA/CSS Prepublication Review Procedure," all information or materials, including works of fiction, that I have prepared for public disclosure which contain or purport to contain, refer to, or are based upon Protected Information, as defined in paragraph 1 of this Agreement. I understand that the term "public disclosure" includes any disclosure of Protected Information to one or more persons not authorized to have access to it. In addition, I agree:

(a) to submit such information and materials for prepublication review during the course of my access to Protected Information under a contract with the NSA and thereafter;

(b) to make any required submissions prior to discussing the information or materials with, or showing them to anyone who is not authorized to have access to them;

(c) not to disclose such information or materials to any person who is not authorized to have access to them until I have received written authorization from the NSA that such disclosure is permitted; and

(d) to assign to the United States Government all rights, title and interest and all royalties, remuneration, or emoluments of whatever form that have resulted, will result, or may result from any disclosure, publication, or revelation of Protected Information not consistent with the terms of this Agreement.

I understand that the purpose of the prepublication review procedure is to determine whether material contemplated for public disclosure contains Protected Information and, if so, to give the NSA an opportunity to prevent the public disclosure of such information. I understand that the NSA is obligated pursuant to this agreement, and in accordance with the terms of NSA/CSS Regulation 10-63, to conduct the prepublication review in a reasonable time, to consult, as necessary, with me through the review process, and to provide an opportunity for me to appeal initial review determinations.

10. In addition to other conditions imposed on me as a result of my access to Protected Information under a contract with the NSA, I agree to:

(a) Notify the Office of Security, NSA, of any unofficial foreign travel by me during the period of my access to Protected Information under a contract with the NSA;

(b) Accept such restrictions on unofficial foreign travel during the period of my access to Protected Information under a contract with the NSA, as may be deemed necessary, to prevent unacceptable risk to the national security, to the NSA, to personnel associated with the NSA or to Protected Information.

(c) Report foreign national associations that are close and continuing. Close and continuing associations are characterized by ties of affection, kinship, obligation or capacity to influence.

(d) Report, in advance, all visits to foreign embassies.

11. I understand that each of the provisions in this Agreement is severable, i.e., all other provisions of this Agreement will remain in full force should it be determined that any provision of this Agreement does not apply to me or is otherwise unenforceable. I also understand that this Agreement applies to me even though I may have executed a similar government non-disclosure agreement.

12. This Agreement shall be interpreted under and in conformance with the law of the United States.

13. I have read this Agreement and my questions, if any, have been answered. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, Section 421 through 426 and 783(b) of Title 50, United States Code; Public Law 88-290; pertinent sections of Executive Order 12958 or any successor order; and NSA/CSS Regulation 10-63, "NSA/CSS Prepublication Review Procedures," so that I may read them at this time, if I so choose. I understand and accept that unless I am released in writing by an authorized representative of the NSA, this Agreement applies during the time I am granted access to Protected Information and at all times thereafter, and applies to all Protected Information to which I may be granted access.

14. I make this Agreement without any mental reservation or purpose of evasion.

15. These restrictions are consistent with and do not supersede, conflict with or otherwise alter the employee obligations, rights or liabilities created by Executive Order 12958; Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosures that may compromise the national security, including Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 USC Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

| SIGNATURE [signed] | COMPANY CASL | ORG |
|---|---|---|
| TYPED OR PRINTED NAME Edward J Snowden | SOCIAL SECURITY NUMBER [redacted] | DATE 07 JULY 2005 |

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the National Security Agency as a prior condition of access to Protected Information.

| SIGNATURE [redacted] | PRINTED [redacted] | DATE 07 JULY 2005 |
|---|---|---|

FORM G170B REV APR 2001 - Page 2
NSN: 7540-FM-001-2991

PEOPLESOFT [redacted]
UPDATED



Privacy Act Advisory – Auth to requesting agency is 50 U.S.C. 3302 note; 50 U.S.C. 403-3(c) U.S.C. 798; and E.O. 10450, 10865, 12333, 12958, and 12968. Auth for ...ing your SSN is E.O. 9397. NSA's Blanket Routine Uses found at 58 Fed. Reg. 10,531 (1993) and the specific uses found in GNSA01 and GNSA10 apply to this information. Information you provide will be used (principally) to document your access to Protected Information and your continuing obligation not to disclose Protected Information without authorization. Your disclosure of information requested by this form is voluntary but refusal to provide information, other than your SSN, may prevent you from obtaining access to Protected Information. Refusal to provide your SSN may delay you from obtaining access to Protected Information.

**NATIONAL SECURITY AGENCY**
Fort George G. Meade, MD 20755-6000

# CONTRACTOR SECURITY AGREEMENT

I understand that access to Protected Information under a U.S. Government agency contract is subject to statutory requirements and penalties and involves a special trust and confidence regarding the national security. Intending to be legally bound, I hereby accept the obligations set forth in this Agreement in consideration of my being granted such access.

1. I have been advised that Protected Information is information obtained as a result of my relationship with NSA which is classified or in the process of a classification determination pursuant to the standards of Executive Order 12958, or any successor order, and implementing regulations. It includes, but is not limited to, intelligence and intelligence-related information, sensitive compartmented information *(information concerning or derived from intelligence sources and methods)*, and cryptologic information *(information concerning communications security and signals intelligence, including information which is also sensitive compartmented information)* protected by Section 798 of Title 18, United States Code.

2. I understand that the burden is upon me to determine whether information or materials within my control are considered by the NSA to be Protected information, and whether the person(s) to whom disclosure is to be made is/are authorized to receive it.

3. I understand that all Protected Information to which I may obtain access hereafter, is and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title or claim whatsoever to such information. I agree that upon demand by an authorized representative of the NSA or upon the conclusion of my authorized access to Protected Information, I shall return all material containing such Protected Information in my possession, or for which I am responsible because of such access. I understand that failure to return such materials may be a violation of Section 793 of Title 18, United States Code, and may constitute a crime for which I may be prosecuted.

4. I understand that the unauthorized disclosure of Protected Information may invoke the criminal sanctions prescribed by one or more of the following statutes - Sections 793, 794, 798, 952, and 1924 of Title 18, United States Code, and Sections 421 through 426 and 783(b) of Title 50, United States Code.

5. I understand that any breach of this Agreement by me may, in accordance with applicable law, result in termination by the NSA of my access to any or all Protected Information at any time it determines such action to be in the interest of national security.

6. I agree not to discuss matters pertaining to Protected Information except when necessary for the proper performance of my duties and only with persons who are currently authorized to receive such information and have a need-to-know.

7. I agree I will report, without delay, to my company security officer or to an NSA security representative the details and circumstances of any possible unauthorized disclosure of Protected Information or of any unauthorized person obtaining or attempting to obtain Protected Information.

8. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action may be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

9. I agree that I will submit for security review in accordance with NSA/CSS Regulation 10-63, "NSA/CSS Prepublication Review Procedure," all information or materials, including works of fiction, that I have prepared for public disclosure which contain or purport to contain, refer to, or are based upon Protected Information, as defined in paragraph 1 of this Agreement. I understand that the term "public disclosure" includes any disclosure of Protected Information to one or more persons not authorized to have access to it. In addition, I agree:

    (a) to submit such information and materials for prepublication review during the course of my access to Protected Information under a contract with the NSA and thereafter;

    (b) to make any required submissions prior to discussing the information or materials with, or showing them to anyone who is not authorized to have access to them;

    (c) not to disclose such information or materials to any person who is not authorized to have access to them until I have received written authorization from the NSA that such disclosure is permitted; and

    (d) to assign to the United States Government all rights, title and interest and all royalties, remuneration, or emoluments of whatever form that have resulted, will result, or may result from any disclosure, publication, or revelation of Protected Information not consistent with the terms of this Agreement.

I understand that the purpose of the prepublication review procedure is to determine whether material contemplated for public disclosure contains Protected Information and, if so, to give the NSA an opportunity to prevent the public disclosure of such information. I understand that the NSA is obligated pursuant to this agreement, and in accordance with the terms of NSA/CSS Regulation 10-63, to conduct the prepublication review in a reasonable time, to consult, as necessary, with me through the review process, and to provide an opportunity for me to appeal initial review determinations.

10. In addition to other conditions imposed on me as a result of my access to Protected Information under a contract with the NSA, I agree to:

(a) Notify the Office of Security, NSA, of any unofficial foreign travel by me during the period of my access to Protected Information under a contract with the NSA;

(b) Accept such restrictions on unofficial foreign travel during the period of my access to Protected Information under a contract with the NSA, as may be deemed necessary, to prevent unacceptable risk to the national security, to the NSA, to personnel associated with the NSA or to Protected Information.

(c) Report foreign national associations that are close and continuing. Close and continuing associations are characterized by ties of affection, kinship, obligation or capacity to influence.

(d) Report, in advance, all visits to foreign embassies.

11. I understand that each of the provisions in this Agreement is severable, i.e., all other provisions of this Agreement will remain in full force should it be determined that any provision of this Agreement does not apply to me or is otherwise unenforceable. I also understand that this Agreement applies to me even though I may have executed a similar government non-disclosure agreement.

12. This Agreement shall be interpreted under and in conformance with the law of the United States.

13. I have read this Agreement and my questions, if any, have been answered. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, Section 421 through 426 and 783(b) of Title 50, United States Code; Public Law 88-290; pertinent sections of Executive Order 12958 or any successor order; and NSA/CSS Regulation 10-63, "NSA/CSS Prepublication Review Procedures," so that I may read them at this time, if I so choose. I understand and accept that unless I am released in writing by an authorized representative of the NSA, this Agreement applies during the time I am granted access to Protected Information and at all times thereafter, and applies to all Protected Information to which I may be granted access.

14. I make this Agreement without any mental reservation or purpose of evasion.

15. These restrictions are consistent with and do not supersede, conflict with or otherwise alter the employee obligations, rights or liabilities created by Executive Order 12958; Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosures that may compromise the national security, including Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 USC Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

| SIGNATURE | COMPANY | ORG |
|---|---|---|
| [signature] | Perot Systems | |
| **TYPED OR PRINTED NAME** Ed Snowden | **SO[redacted]** | **DATE** 6 MAY 2009 |

**The execution of this Agreement was witnessed by the undesigned who accepted it on behalf of the National Security Agency as a prior condition of access to Protected Information.**

| SIGNATURE | PRINTED NAME | DATE |
|---|---|---|
| [redacted] | [redacted] | 6 MAY 2009 |

FORM G170B REV APR 2001 - Page 2  
NSN: 7540-FM-001-2991

PAGE 2

**Privacy Act Statement:** Auth. for requesting info: 50 U.S.C. 402 note; 50 U.S.C. 403-3(c)(6); 18 U.S.C. 798; and E.O. 10450, 10865, 12333, 12958, and 12968. Auth. or collecting your SSN is E.O. 9397. NSA's Blanket Routine Uses found at 58 Fed. Reg. 10.531 (1993) and the specific uses found in GNSA01 and GNSA10 apply to this information. Information you provide will be used (principally) to document your access to protected information and your continuing obligation not to disclose protected information without authorization. Your disclosure of information requested by this form is voluntary but refusal to provide information, other than your SSN, may prevent you from obtaining access to protected information. Refusal to provide your SSN may delay you from obtaining access to protected information.

# NATIONAL SECURITY AGENCY
Fort George G. Meade, MD 20755-6000

## CONTRACTOR SECURITY AGREEMENT

I understand that access to protected information under a U.S. Government agency contract is subject to statutory requirements and penalties and involves a special trust and confidence regarding the national security. Intending to be legally bound, I hereby accept the obligations set forth in this Agreement in consideration of my being granted such access.

1. I have been advised that protected information is information obtained as a result of my relationship with NSA which is classified or in the process of a classification determination pursuant to the standards of Executive Order 12958, or any successor order, and implementing regulations. It includes, but is not limited to, intelligence and intelligence-related information, sensitive compartmented information *(information concerning or derived from intelligence sources and methods)*, and cryptologic information *(information concerning communications security and signals intelligence, including information which is also sensitive compartmented information)* protected by Section 798 of Title 18, United States Code.

2. I understand that the burden is upon me to determine whether information or materials within my control are considered by the NSA to be protected information and whether the person(s) to whom disclosure is to be made is/are authorized to receive it.

3. I understand that all protected information to which I may obtain access hereafter, is and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title or claim whatsoever to such information. I agree that upon demand by an authorized representative of the NSA or upon the conclusion of my authorized access to protected information, I shall return all material containing such protected information in my possession, or for which I am responsible because of such access. I understand that failure to return such materials may be a violation of Section 793 of Title 18, United States Code, and may constitute a crime for which I may be prosecuted.

4. I understand that the unauthorized disclosure of protected information may invoke the criminal sanctions prescribed by one or more of the following statutes: Sections 793, 794, 798, 952, and 1924 of Title 18, United States Code, and Sections 421 through 426 and 783(b) of Title 50, United States Code.

5. I understand that any breach of this Agreement by me may, in accordance with applicable law, result in termination by the NSA of my access to protected information at any time it determines such action to be in the interest of national security.

6. I agree not to discuss matters pertaining to protected information except when necessary for the proper performance of my duties and only with persons who are currently authorized to receive such information and have a need-to-know.

7. I agree I will report, without delay, to my company security officer or to an NSA security representative the details and circumstances of any possible unauthorized disclosure of protected information or of *any* unauthorized person obtaining or attempting to obtain protected information.

8. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action may be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

9. I agree that I will submit for security review in accordance with NSA/CSS Policy 1 - 30 "Review of NSA/CSS Information for Public Dissemination" all information or materials, including works of fiction, that I have prepared for public disclosure which contain or purport to contain, refer to, or are based upon protected information, as defined in paragraph 1 of this Agreement. I understand that the term "public disclosure" includes any disclosure of protected information to one or more persons not authorized to have access to it. In addition, I agree:

    (a) to submit such information and materials for prepublication review during the course of my access to protected information under a contract with the NSA and thereafter;

    (b) to make any required submissions prior to discussing the information or materials with, or showing them to anyone who is not authorized to have access to them;

    (c) not to disclose such information or materials to any person who is not authorized to have access to them until I have received written authorization from the NSA that such disclosure is permitted; and

    (d) to assign to the United States Government all rights, title and interest and all royalties, remuneration, or emoluments of whatever form that have resulted, will result, or may result from any disclosure, publication, or revelation of protected information not consistent with the terms of this agreement.

I understand that the purpose of the prepublication review procedure is to determine whether material contemplated for public disclosure contains protected information and if so, to give the NSA an opportunity to prevent the public disclosure of such information. I understand that the NSA is obligated pursuant to this Agreement, and in accordance with the terms of NSA/CSS Policy 1 - 30, to conduct the prepublication review in a reasonable time, to consult, as necessary, with me through the review process, and to provide an opportunity for me to appeal initial review determinations.

10. In addition to other conditions imposed on me as a result of my access to protected information under a contract with the NSA, I agree to:

   (a) Notify the Associate Directorate for Security and Counterintelligence, NSA, of any unofficial foreign travel by me during the period of my access to protected information under a contract with the NSA;

   (b) Accept such restrictions on unofficial foreign travel during the period of my access to protected information under a contract with the NSA, as may be deemed necessary to prevent unacceptable risk to national security, to the NSA, to personnel associated with the NSA or to protected information;

   (c) Report foreign national associations that are close and continuing. Close and continuing associations are characterized by ties of affection, kinship, obligation or capacity to influence;

   (d) Report, in advance, all visits to foreign embassies.

11. I understand that each of the provisions of this Agreement is severable, i.e., all other provisions of this Agreement will remain in full force should it be determined that any provision of this Agreement does not apply to me or is not otherwise unenforceable. I also understand that this Agreement applies to me even though I may have executed a similar government non-disclosure agreement.

12. This Agreement shall be interpreted under and in conformance with the law of the United States.

13. I have read this Agreement and my questions, if any, have been answered. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, Section 421 through 426 and 783(b) of Title 50, United States Code; Public Law 88-290; pertinent sections of Executive Order 12958 or any successor order; and NSA/CSS Policy 1 - 30 "Review of NSA/CSS Information for Public Dissemination" so that I may read them at this time, if I so choose. I understand and accept that unless I am released in writing by an authorized representative of the NSA, this Agreement applies during the time I am granted access to protected information and at all times thereafter, and applies to all protected information to which I may be granted access.

14. I make this Agreement without any mental reservation or purpose of evasion.

15. These restrictions are consistent with and do not supersede, conflict with or otherwise alter the employee obligations, rights or liabilities created by Executive Order 12958; Section 7211 of Title 5; United States Code *(governing disclosures to Congress)*, Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act *(governing disclosure to Congress by members of the military)*; Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act *(governing disclosures of illegality, waste, fraud, abuse or public health or safety threats)*; the Intelligence Identities Protection Act of 1982 (50 USC421 et seq.) *(governing disclosures that could expose confidential Government agents)*, and the statutes which protect against disclosures that may compromise national security, including Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 USC Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

| SIGNATURE | COMPANY | ORG |
|---|---|---|
| [signature] | Booz Allen Hamilton | |

| TYPED OR PRINTED NAME | SOCIAL SECURITY NUMBER | DATE |
|---|---|---|
| Edward Joseph Snowden | [redacted] | 3/27/13 |

**The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the National Security Agency as a prior condition of access to Protected Information.**

| SIGNATURE | PRINTED NAME | DATE |
|---|---|---|
| [redacted] | [redacted] | 3/27/13 |

FORM G170B REV JAN 2010- PAGE 2
NSN: 7540-FM-001-2991

PAGE 2