IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) <br><br> Plaintiff,      ) <br><br> v.      ) <br><br> EDWARD SNOWDEN <br> *exact address unknown*,      ) <br><br> Defendant,      ) <br><br> and      ) <br><br> MACMILLAN PUBLISHERS INC., <br> 175 5th Avenue <br> New York, NY 10010 ,      ) <br><br> MACMILLAN PUBLISHING GROUP, LLC <br> d/b/a HENRY HOLT AND COMPANY, <br> 175 5th Avenue <br> New York, NY 10010 ,      ) <br><br> HOLTZBRINCK PUBLISHERS, LLC c/o <br> HOLTZBRINCK PUBLISHING HOLDINGS LP, <br> 175 5th Avenue <br> New York, NY 10010,      ) <br><br> Relief-Defendants.      ) | Civil Action No. 1:19-cv-1197 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ALTERNATIVE FOREIGN SERVICE PURSUANT TO RULE 4(f)(3)**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT ....................................................................................................................... 4

I.      Because Service Under the Hague Convention is Futile, the Court May Authorize
        an Alternative Method.............................................................................................. 4

II.     There Are at Least Three Methods of Alternative Service Available Here......................... 7

        A.      Ben Wizner................................................................................................ 7

        B.      Macmillan Publishers, Inc. ..................................................................... 10

        C.      Freedom of the Press Foundation ........................................................ 11

III.    Unless and Until Snowden Enters an Appearance, The Court Should Authorize the
        Same Method of Service for Future Court Filings............................................. 12

CONCLUSION.................................................................................................................. 13

## INTRODUCTION

Plaintiff United States of America (hereafter "United States" or "Government") respectfully requests permission to serve the Complaint on an individual in a foreign country through alternative means, pursuant to Fed. R. Civ. P. 4(f)(3).  Specifically, defendant Edward Snowden is believed to currently reside in Russia.  And as confirmed by the United States Department of State, because Russia does not cooperate with the United States on service of judicial documents, it would be futile to attempt to serve Snowden pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents or through diplomatic channels.  *See* Fed. R. Civ. P. 4(f)(1), (2)(B).  Accordingly, as numerous other courts have recognized, Snowden may properly be served "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Here, there are at least three alternative means of service available, none of which are prohibited by international agreement, and each of which would be sufficient under the Due Process Clause for ensuring that a defendant receives adequate notice of a lawsuit.  First, Snowden can be served through his U.S.-based attorney, who is also reported to have been Snowden's primary contact in connection with publishing the book that is the primary subject of this lawsuit. Second, Snowden can be served through his U.S.-based publishing company.  Third, Snowden can be served through a U.S.-based organization of which he is the President of the Board of Directors.[1]

Consistent with Fed. R. Civ. P. 4(f)(3), the Court should order that the Complaint be served on Snowden through one or more of these alternative means.  Moreover, to the extent Snowden

---

[1] The United States will attempt to provide, as soon as practicable and to the best of its abilities, copies of both the Complaint and instant motion and memorandum to each of these three individuals and entities (as set forth in more detail below, Ben Wizner, Macmillan Publishing, and the Freedom of the Press Foundation).

fails to enter an appearance in this lawsuit, the Court should order that subsequent documents filed in the case may be served by the same means.

## BACKGROUND

The United States has filed this lawsuit against defendant Edward Snowden, arising from publication of a book Snowden wrote entitled *Permanent Record* as well as speeches he has given, both in violation of Snowden's contractual and fiduciary obligations to the United States. *See* Compl. (ECF No. 1) ¶ 1. Snowden's book is being published by Macmillan Publishers Inc., who is also named in this lawsuit as a relief-defendant necessary for purposes of according complete relief to the United States. *See id.* ¶ 6; *see also* Fed. R. Civ. P. 19(a)(1)(A); *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-92 (4th Cir. 2002) (discussing the practice of naming a "nominal defendant" as part of a suit "only as the holder of assets that must be recovered in order to afford complete relief; no cause of action is asserted against a nominal defendant").

Although Snowden's exact address is unknown, he is believed to currently reside in Russia. *See* Compl. ¶ 5. Because Snowden is outside the United States, service of the Summons and Complaint is governed by Fed. R. Civ. P. 4(f) ("Serving an Individual in a Foreign Country"). Under Rule 4(f), "[u]nless federal law provides otherwise, an individual...may be served at a place not within any judicial district of the United States:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice....; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

As the Advisory Committee notes reflect, "[u]se of the [Hague] Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." Fed. R. Civ. P. 4 adv. cmte. notes (1993) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)). But "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707. "Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications." *Id.*

When service via the Hague Convention is unavailable and/or unnecessary, Rule 4 provides alternative options for effectuating service. *See* Fed. R. Civ. P. 4(f)(2), (3). As relevant here, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). In addition to compliance with Rule 4(f), any method of service must also comply with the Due Process Clause, meaning that the method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

As the Department of State's website discusses, although both Russia and the United States are parties to the Hague Convention, "[i]n July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters." U.S. Dep't of State, *Russia Judicial Assistance Information* (Nov. 15, 2013), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/RussianFederation.html (last visited September 16, 2019). In particular, "[t]he Russian Federation refuses to serve letters of request from the United States for service of process presented under the terms of the 1965 Hague Service Convention or to execute letters rogatory

requesting service of process transmitted via diplomatic channels." *Id.* "While the Department of State is prepared to transmit letters rogatory for service or evidence to Russian authorities via diplomatic channels, in the Department's experience, all such requests are returned unexecuted." *Id.*

Because of the futility of attempting service in Russia through the Hague Convention—and the adequacy of various alternative forms of domestic service to provide Snowden with notice—the Government hereby requests judicial authorization to effectuate service through alternative means, pursuant to Fed. R. Civ. P. 4(f)(3).

## STANDARD OF REVIEW

"A court is afforded wide discretion in ordering service of process under Rule 4(f)(3), which provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015) (citation and alterations omitted); *see also BP Prod. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) (Hudson, J.) (same). "Recent decisions establish that courts applying Rule 4(f)(3) can order any means of service so long as it provides reasonable assurance that defendant will be notified of the lawsuit and is not prohibited by international agreement." *WhosHere, Inc. v. Orun*, No. 1:13-cv-526-AJT, 2014 WL 670817, at *2 (E.D. Va. Feb. 20, 2014) (Jones, M.J.).

## ARGUMENT

## I. BECAUSE SERVICE UNDER THE HAGUE CONVENTION IS FUTILE, THE COURT MAY AUTHORIZE AN ALTERNATIVE METHOD.

Courts have consistently recognized that, given Russia's lack of cooperation with requests for service under the Hague Convention, district courts are free to order alternative methods of service on parties located in Russia pursuant to Rule 4(f)(3). *See, e.g.*, *Nuance Commc'ns, Inc. v.*

*Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010) ("Substituted service under Rule 4(f)(3) has also been specifically used to serve litigants from the Russian Federation in multiple U.S. courts.").  Those decisions are equally applicable here, especially given the lack of a known address for Snowden.  Accordingly, this Court should likewise authorize an alternative method of service.

As set forth above, Rule 4(f) sets out three alternative options for serving individuals abroad; it "does not denote any hierarchy or preference of one method of service over another." *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (Hudson, J.); *see also Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015) ("Service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant.") (citation omitted); Wright & Miller, *Federal Practice & Procedure*, § 1134 (4th ed. 2019) ("Courts have interpreted Rule 4(f) to give no preference to the methods of service permitted in its scope.").  Under the terms of Rule 4(f), however, any method of service must not be "prohibited by international agreement, including the Hague Convention referenced in Rule 4(f)(1)." *FMAC Loan Receivables*, 228 F.R.D. at 534.

When the Hague Convention applies, its terms are mandatory.  *See* Fed. R. Civ. P. 4 adv. cmte. notes (1993).  However, "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service."  *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707.  "'Where service on a domestic agent is valid and complete under both [forum law] and the Due Process Clause, our inquiry ends and the Convention has no further implications.'" *FMAC Loan Receivables*, 228 F.R.D. at 534 (quoting *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707); *see also*, *e.g.*, *Calista Enterprises Ltd. v. Tenza Trading Ltd.*,

40 F. Supp. 3d 1371, 1375-76 (D. Or. 2014) ("[F]or the purposes of the Hague Service Convention, the place where service is effected is where—as defined by forum law—service is complete.  If service is effected domestically, then the Hague Service Convention does not apply.").

Independently, the Hague Convention does not apply when attempted compliance with its terms would be futile.  As discussed above, although both the United States and Russia are signatories to the Convention as a formal matter, as a practical matter Russia has ceased cooperating with requests for service under the Convention.  *See* U.S. Dep't of State, *Russia Judicial Assistance Information* (Nov. 15, 2013), *supra*.  Russia also does not cooperate with service of process via diplomatic channels.  *Cf.* Fed. R. Civ. P. 4(f)(2)(B).

In these circumstances, numerous courts have held that attempted service via the Hague Convention is unnecessary, and the court may instead authorize alternative methods of service pursuant to Rule 4(f)(3).  *See, e.g.*, *Nuance Commc'ns, Inc.*, 626 F.3d at 1239 ("Substituted service under Rule 4(f)(3) has also been specifically used to serve litigants from the Russian Federation in multiple U.S. courts."); *The NOCO Co. v. Khaustov*, No. 1:19-cv-196, 2019 WL 4218637, at *2 (N.D. Ohio Sept. 5, 2019) ("[F]ederal courts have found that it is 'fair to conclude that there are no internationally agreed means of service for those cases in which the defendant being served resides in Russia, and that any attempts to serve process through Hague Convention procedures would most likely be unsuccessful.'" (quoting *SEC v. Dubovoy*, No. 15-cv-6076-MCA/MAH, 2016 WL 7217607, at *2 (D.N.J. Dec. 13, 2016) (collecting cases)); *Smith v. Wolf Performance Ammunition*, No. 2:13-cv-02223-JCM, 2015 WL 315891, at *3 (D. Nev. Jan. 23, 2015); *Microsoft Corp. v. Does 1-18*, No. 1:13-cv-139-LMB/TCB, 2014 WL 1338677, at *3 (E.D. Va. Apr. 2, 2014) (Brinkema, J.); *Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, No. 2:13-CV-458, 2013 WL 1644808, at *1 (W.D. Pa. Apr. 16, 2013); *Arista Records LLC v. Media Servs. LLC*, No. 06-cv-

15319-NRB, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008).  Consistent with this overwhelming authority, authorizing an alternative method of service under Rule 4(f)(3) is well-justified here.

## II.   THERE ARE AT LEAST THREE METHODS OF ALTERNATIVE SERVICE AVAILABLE HERE.

This Court should authorize alternative service pursuant to one (or, if necessary, more than one) of the methods proposed below.  Because each of these methods would involve service domestically, none is prohibited by the Hague Service Convention.  *See Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707.  Moreover, each one satisfies the Due Process Clause by being reasonably likely to inform Snowden of the lawsuit.  Thus, each one by itself satisfies Rule 4(f)(3), and certainly the combination of several methods would be more than sufficient.

First, the Government could serve Snowden through his principal legal adviser, Ben Wizner, who was reportedly involved in the publication of *Permanent Record* and who purports to have near daily contact with Snowden.  Second, the Government could serve Snowden through his publishing company.  Third and finally, as a last resort, Snowden is also the President of a U.S.-based organization, and service on the organization would be reasonably likely to apprise him of the pendency of the suit.  The Government respectfully submits that only one of these methods is necessary, but to the extent the Court has concerns about the adequacy of a single method, certainly the combination of one or more of these methods would amply satisfy the Due Process Clause's requirements.

### A.   Ben Wizner

First, Snowden may be properly served through Ben Wizner, director of the American Civil Liberties Union's Speech, Privacy, and Technology Project.  Mr. Wizner's biography on the ACLU website also describes him as being, since July of 2013, "the principal legal advisor to NSA whistleblower Edward Snowden."  Biography, Ben Wizner, Director, ACLU Speech, Privacy, and

Technology Project, https://www.aclu.org/bio/ben-wizner   (last visited September 16, 2019). Consistent with such representation, in an article regarding *Permanent Record*, the Associated Press reported that "Snowden's primary contact with the publisher was his principal legal adviser, Ben Wizner,"  Associated Press, *Edward Snowden book coming out Sept. 17* (Aug. 1, 2019), https://www.apnews.com/eaf726bd05e3491bb03852a10e10b1bf (last visited September 16, 2019).  Further, in the introduction to an interview of Snowden conducted by Mr. Wizner, and posted to the ALCU website within the past year, Mr. Wizner describes himself as having, "over the last five years, … carried on an almost daily conversation" with Snowden, and "sometimes" meeting with Snowden "in person in Moscow." *Edward Snowden Explains Blockchain to His Lawyer—and the Rest of Us* (Nov. 20, 2018), https://www.aclu.org/blog/privacy-technology/internet-privacy/edward-snowden-explains-blockchain-his-lawyer-and-rest-us   (last visited September 16, 2019).

Other media reports—as well as online biographies for Mr. Wizner, similarly confirm Mr. Wizner's longstanding and ongoing legal representation of Snowden. *See*, *e.g.*, *Ben Wizner, Biography*, https://www.apbspeakers.com/speaker/ben-wizner/ (last visited September 16, 2019); *Ben Wizner, Guest Author*, https://www.justsecurity.org/author/wiznerben/  (last visited September 16, 2019); *Ben Wizner: Edward Snowden didn't expose mass NSA surveillance to make friends* (Apr. 19, 2018), https://medium.com/newsvoice/ben-wizner-edward-snowden-didnt-expose-mass-nsa-surveillance-to-make-friends-26e38f670875 (last visited September 16, 2019).  At least one media source reports that Mr. Wizner may, in addition to serving as Snowden's principal legal advisor, also play a role in Snowden's procurement of paid speaking appearances. *Defending Snowden* (Mar. 26, 2014), https://news.harvard.edu/gazette/story/2014/03/defending-snowden/ (last visited

September 16, 2019) ("Asked to detail his work with 'Team Snowden,' Wizner said that he acts largely as a gatekeeper, handling the dozen or so daily media requests and consulting with colleagues, including a human-rights lawyer in Russia, about how and when Snowden should speak publicly.").

It is well-established that the Due Process Clause permits service of process on an individual's attorney or agent when there is a basis for believing that the individual is in contact with the attorney or agent.  *BP Prod. N. Am.*, 232 F.R.D. at 265 ("The Court concludes that [an American attorney] must have some means of communicating with defendant, and he is therefore a proper party to receive service of process on his behalf."); *see also, e.g.*, *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) ("[A] party seeking leave to serve an individual by counsel must show adequate communication between the individual and the attorney."); *In re Heckmann Corp. Secs. Litig.*, No. 10-378-LPS-MPT, 2011 WL 5855333, at *4 (D. Del. Nov. 22, 2011) ("Rule 4(f) due process concerns are satisfied so long as there is regular contact between the attorney and the defendant"); *Knit With v. Knitting Fever, Inc.*, Nos. 08-4221, 08-4775, 2010 WL 4977944, at *5 (E.D. Pa. Dec. 7, 2010) (authorizing substituted service under Rule 4(f)(3) in light of defendants' "regular contact with their counsel"); *Marlabs, Inc. v. Jakher*, No. 07-cv-04074, 2010 WL 1644041, *3 (D.N.J. April 22, 2010); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 932 (N.D. Ill. 2009), *vacated and remanded on other grounds sub nom. Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011).

Importantly, courts have rejected the argument that service on attorneys or agents is impermissible when the attorney or agent has not been "authorized" to accept service in the case. "Due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf. Instead, '[t]he

reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.'" *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565-66 (C.D. Cal. 2012) (quoting *Mullane*, 339 U.S. at 315); *see also, e.g.*, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d at 932; *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *3 (W.D. Tex. July 2, 2014).  Indeed, another Court within this Circuit has noted that "[g]ranting alternative service under Rule 4(f)(3) on a foreign defendant's counsel is not new." *RoyaltyStat, LLC v. IntangibleSpring Corp.*, No. 15-cv-3940, 2017 WL 930129, at *3 (D. Md. Mar. 9, 2017) (collecting cases); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) ("Service upon a foreign defendant's United States-based counsel is a common form of service ordered under Rule 4(f)(3).").

Here, Mr. Wizner has for many years held himself out as "the principal legal advisor" to Snowden—and he continues to do so today.  Biography, Ben Wizner, Director, ACLU Speech, Privacy, and Technology Project, *supra*.  Further, he has averred in an online publication for the ACLU that since assuming this role, he has established a practice of communicating with Snowden on an "almost daily" basis. *Edward Snowden Explains Blockchain to His Lawyer—and the Rest of Us*, *supra*.  In such circumstances, Mr. Wizner should be able to apprise Snowden of the pendency of this civil matter. Accordingly, due process would be satisfied by service on Snowden through Mr. Wizner, and the United States respectfully requests that this Court authorize the same.

## B. Macmillan Publishers, Inc.

Second, Snowden may also be properly served through Macmillan Publishers, Inc.  As explained, Macmillan is the publisher of *Permanent Record*, the subject of this suit.  *See* Macmillan Publishers, *Macmillan announces global publication of Edward Snowden's memoir Permanent Record* (Aug. 1, 2019), https://www.panmacmillan.com/blogs/general/edward-snowden-book-

permanent-record  (last visited September 16, 2019).  As such, Macmillan necessarily has business contacts   with  Snowden  regarding  this  publication,  which  is  the  subject  of  this  lawsuit. Additionally, because Macmillan is  a  relief defendant, it has an interest in Snowden receiving notice of the action.

As explained above, Rule 4(f)(3) affords this Court with "wide discretion" and "flexibility" in tailoring alternative means of service "to the facts and circumstances of [each] particular case."  *Enovative Techs.*, 622 F. App'x at 214 (citation omitted); *see also*, *e.g.*, *Dubovoy*, 2016 WL 7217607, at *3 ("[W]hat qualifies as sufficient service varies depending on each case's particular facts and circumstances.").  On the unique circumstances presented here, service on Snowden though his publisher Macmillan would be "'reasonably calculated under all the circumstances'" to give notice to him.  *Enovative Techs.*, 622 F. App'x at 214  (quoting *Mullane*, 339 U.S. at 314).  Accordingly, the United States respectfully requests that the Court authorize such service as an alternative or additional means by which it may properly effectuate service on Snowden.

**C.      Freedom of the Press Foundation**

Finally, the Court should also authorize Snowden to be served under Rule 4(f)(3) through the Freedom of the Press Foundation, an organization located in San Francisco, California, for which Snowden serves as President of the Board of Directors.  *See* Board of Directors, Freedom of the Press Foundation, https://freedom.press/about/board/ (last visited September 16, 2019);  *see also*

https://twitter.com/Snowden?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eautho r (last visited September 16, 2019) (Snowden's Twitter profile, touting this role: "I used to work for the government. Now I work for the public. President at @FreedomofPress.").

Again, given Snowden's active and ongoing involvement with the Freedom of the Press

Foundation, in the particular and unique circumstances presented here, service on him through this organization would be "'reasonably calculated" to apprise him of the pendency of this case. *Mullane*, 339 U.S. at 314.  Accordingly, the United States further requests that the Court authorize such service as an alternative or additional means by which it may properly effectuate service on Snowden.

### III.   UNLESS AND UNTIL SNOWDEN ENTERS AN APPEARANCE, THE COURT SHOULD AUTHORIZE THE SAME METHOD OF SERVICE FOR FUTURE COURT FILINGS.

In addition to the Summons and Complaint, the United States requests permission to use these alternative means to comply with the service requirements of subsequent judicial documents in this case for Snowden.  Although the heading of Rule 4—"Summons"—appears to indicate that the rule only applies to case-initiating documents, at least in the case of foreign defendants, courts have found Rule 4(f) to be an appropriate service mechanism for other judicial documents "notwithstanding the heading of Rule 4."  *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, No. 03-08554, 2009 WL 1055577, *2 (S.D.N.Y. April 17, 2009) (in Federal Debt Collection Procedures Act matter, foreign garnishee may be served writ of garnishment under Rule 4); *see also U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 621 (S.D. Fla. 2011) (granting plaintiff's motion under Rule 4(f)(3) for leave to serve the summons and complaint, and all subsequent pleadings on foreign defendant via courier message to its counsel in Florida); *Acushnet Co. v. Thiede*, No. CV 12-02508-PHX-JAT, 2013 WL 5428758, at *1 (D. Ariz. Sept. 27, 2013) (authorizing substituted service under Rule 4(f)(3) of, *inter alia*, "all … current and future filings in this matter"); *Keck v. Alibaba.com, Inc.*, No. 17-CV-05672-BLF, 2018 WL 3632160, at *4 (N.D. Cal. July 31, 2018) (similar); *Lifted Research Grp., Inc. v. Bbhats.net*, No. 13-62086-CIV, 2013 WL 12086772, at *2-3 (S.D. Fla. Nov. 26, 2013) (similar); *Chanel, Inc. v. He Zhizhong*, No. CIV. 09-2818, 2010 WL 985195, at *2 (W.D. Tenn. Mar. 16, 2010) (similar).

For all of the same reasons explained above—and in particular, because of Snowden's apparent current residency in Russia—to the extent that Snowden does not appear in this matter, service of future pleadings and filings on him will be difficult if not impossible.  However, also for all of the same reasons as set forth above, service through one or some combination of the United States' proposed means of substituted service would comport with the Federal Rules of Civil Procedure, the Hague Service Convention, and the Due Process Clause.  Accordingly, the United States respectfully requests that the Court authorizes service not only of the Complaint and summons through such means, but also of any and all of the United States' future pleadings and filings in this matter, unless and until Snowden enters an appearance.

## CONCLUSION

For the reasons given above, the United States respectfully requests that the Court authorize service of process of the summons and Complaint on Defendant Edward Snowden through his American counsel Ben Wizner, his publisher Macmillan, the Freedom of the Press Foundation, or some combination of these individuals and entities.  Additionally, unless and until Snowden enters an appearance in these proceedings, the United States further requests that the Court also authorize service of any and all future pleadings and filings by the United States on Snowden through the same means.

Dated:  September 17, 2019                    Respectfully Submitted,

                                              JOSEPH H. HUNT
                                              Assistant Attorney General

                                              G. ZACHARY TERWILLIGER
                                              United States Attorney

                                              ANTHONY J. COPPOLINO
                                              Deputy Director, Federal Programs Branch

*/s/ R. Trent McCotter*
R. TRENT MCCOTTER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:        (703) 299-3845
Fax:        (703) 299-3983
Email:   trent.mccotter@usdoj.gov


*/s/ Daniel Schwei*
DANIEL SCHWEI
Senior Trial Counsel
ANTONIA KONKOLY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 12024
Washington, DC 20530
Tel.:     (202) 305-8693
Fax:     (202) 616-8470
Email:  daniel.s.schwei@usdoj.gov

*Counsel for the United States*