**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

_____  )
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
            Plaintiff,                    )
                                          )
        v.                                )        Case No. 1:19-cv-1197-LO-TCB
                                          )
EDWARD SNOWDEN,                           )
                                          )
            Defendant,                    )
                                          )
and                                       )
                                          )
MACMILLAN PUBLISHING GROUP, LLC           )
d/b/a HENRY HOLT AND COMPANY,             )
                                          )
            Relief-Defendant.             )
_____  )

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO SANCTION EDWARD SNOWDEN FOR HIS REFUSAL TO PARTICIPATE IN CIVIL DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(ii) and (b)(2)(A), Plaintiff

United States of America moves this Court to sanction Defendant Edward Snowden

("Snowden") for his blanket refusal to respond to any of the United States' Interrogatories and

Requests for the Production of Document (collectively, the United States' "discovery requests").

As set forth below, the imposition of sanctions is amply supported by the circumstances

presented by this motion, where Snowden's outright refusal to engage to engage in discovery

plainly evidences bad faith, and has substantially prejudiced the United States in its efforts to the

collect information which it believes is relevant to seeking a remedy on its claims. Such conduct

should appropriately be both punished and deterred, through the imposition of narrowly tailored

evidentiary sanctions, detailed below, that will ameliorate the prejudice suffered by the United

States and thus at least minimally "level[] the evidentiary playing field" that has been distorted

by Snowden's obstruction. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

## PROCEDURAL BACKGROUND

### I.     The Instant Suit, This Court's Summary Judgment Opinion, and the United States' Efforts to Discover Information from Snowden

The United States filed this lawsuit against Edward Snowden based on his publication of

a book entitled *Permanent Record* (Count One of the Amended Complaint, or the "*Permanent

Record* claim"), and delivery of intelligence-related speeches (Count Two of the Amended

Complaint, or the "speeches claim") without first submitting those public disclosures to the

Government for prepublication review for a determination of whether the disclosures contained

classified information. *See generally* Am. Compl., Dkt. No. 15, ¶¶ 109-22. These unauthorized

public disclosures violated the terms of Secrecy Agreements that Snowden signed with the

Central Intelligence Agency ("CIA") and National Security Agency ("NSA"), which provided

that prior to making any public disclosures pertaining to his work for the agencies, he would

submit any and all such preparations to the agencies for prepublication review. As a result of

Snowden's breach of his Secrecy Agreements and fiduciary duties, the United States seeks

(among other things) to recover all proceeds earned by Snowden deriving from these

unauthorized intelligence-related disclosures. *See* Am. Compl., Prayer for Relief ¶¶ (b)-(f).

On December 17, 2019, the Court granted the United States' motion for summary

judgment as to Snowden's liability as to both the *Permanent Record* claim and the speeches

claim. *United States v. Snowden*, No. 1:19-CV-1197, --- F. Supp. 3d ---, 2019 WL 8333546

(E.D. Va. Dec. 17, 2019). Specifically, the Court held that Snowden was "not entitled to

discovery" prior to determining liability, *id.* at *5; that Snowden had "effectively waived the

affirmative defenses which he now seeks to assert," *id.*; and that "there is no genuine dispute of material fact that Snowden publicly disclosed the type of information and materials . . . in *Permanent Record* and his speeches" that his Secrecy Agreements required to be submitted for prepublication review, and that therefore "the Government is entitled to summary judgment on both Counts." *Id.* at *6.

With respect to Snowden's speeches in particular, the Court's opinion addressed at least four illustrative speeches that clearly violated Snowden's prepublication review obligations, but it did not address the appropriate remedy for the universe of Snowden's violations. *See Snowden*, 2019 WL 8333546, at *6-7; *see also* Pl.'s Mot. for Partial Summ. J. as to Liability, Dkt. No. 22, at 25-26 ("Snowden's prepublication review obligations extend to all of his speeches purporting to discuss intelligence-related matters  at CIA and NSA, and/or that purport to contain, refer to, or might be based on information that is classified . . . . At the remedial phase of this case, the Government may require discovery to determine the full universe of speeches that should have been submitted for prepublication review[.]").

On February 12, 2020, the parties filed a Joint Proposed Discovery Plan, Dkt. No. 77, which, on February 13, 2020, the Court adopted, Dkt. No. 78. On March 6, 2020, the United States served on Snowden eight interrogatories, Plaintiff's Exhibit ("PEX") 1, and twelve requests for the production of documents, PEX 2. As relevant to the instant motion, these discovery requests sought, *inter alia*, information and documents related to Snowden's receipt of payment for or in conjunction with *Permanent Record*; his exercise of any subsidiary rights related to that book; any notes or outlines prepared in conjunction with his paid speaking engagements; any intelligence-related materials that he discussed, used, or displayed in conjunction with or in the course of his paid speaking engagements; any audio or video

recordings, or written transcriptions of, his paid speaking engagements; written summaries of the contents of his paid speaking engagements, particularly as those contents pertained to any intelligence-related matters; and information regarding Snowden's financial compensation for his paid speaking engagements. *See* PEX 1 at 5-7; PEX 2 at 6-8.

Pursuant to Local Civil Rule 26(C) and Federal Rules of Civil Procedure 33 and 34, Snowden's deadline to interpose any objections to the United States' discovery requests was March 23, 2020, and his deadline to respond was April 6, 2020. On April 9, 2020, Snowden moved, with the United States' consent, to extend these deadlines to April 13, 2020, and April 22, 2020, respectively, due to exigencies related to the ongoing global Covid-19 pandemic. Dkt. No. 86. The Court granted this motion, Dkt. No. 87, and on April 13, 2020, Snowden served objections to some, but not all, of the United States' Interrogatories, *see* PEX 3, and Requests for the Production of Documents, *see* PEX 4. Notwithstanding that Snowden had sought and been granted an extension for the purpose of responding to the United States' discovery requests—and that he had not interposed any objections to several of these requests—on April 22, 2020, counsel for Snowden informed the United States that "contrary to the advice of his counsel, Mr. Snowden is declining to provide answers to the government's discovery requests at this time." PEX 5.

On April 27, 2020, counsel for the United States informed Snowden's counsel that the United States was considering a motion to compel responses to the discovery requests, and inquired whether—in light of Snowden's blanket refusal to provide any responses—a further conferral between the parties had any potential to be productive. *Id.* On April 29, 2020, Snowden's counsel confirmed the understanding of Government counsel that "consultation under Local Rule 37(E) would be futile," and further stated that "counsel will certainly not be opposing

your motion to compel and I do not believe that Mr. Snowden will seek to do so pro se." *Id.*

In light of Snowden's across-the-board failure to provide any substantive discovery responses against the advice of his own attorney, the United States seeks sanctions pursuant to Federal Rule of Civil Procedure 37. The United States has attempted to mitigate the harm caused by Snowden's refusal to engage in discovery by attempting to obtain information through other methods; those efforts are set forth in detail below. Counsel for the United States communicated with Snowden's counsel regarding its intent to move for sanctions on various occasions, including most recently on July 6, 2020, when counsel for Snowden confirmed his "agree[ment] that further conversation would not be fruitful" and that the United States had satisfied its duty under Federal Rule of Civil Procedure 37(d)(1)(B) to "attempt to obtain the answer or response [to its discovery requests] without court action," as required before bringing this motion. PEX 6.

**II.     Information Related to *Permanent Record* and Snowden's Paid Speaking Engagements that the United States Has Been Able to Obtain from Other Sources**

**A.     Information Related to *Permanent Record***

In its Amended Complaint, the United States named, as relief-defendants only, Macmillan Publishing Group, LLC ("Macmillan US"), Verlagsgruppe Georg von Holtzbrinck GmbH, and HIM Holtzbrinck 37 GmbH (collectively, the "Relief-Defendants"), as the relevant entities responsible for the publication and distribution of *Permanent Record*. Dkt. No. 15 ¶¶ 1, 6-9. Independent of its discovery on Snowden, the United States entered into a Protective Order with Macmillan US, Dkt. No. 29, pursuant to which Macmillan voluntarily provided the United States with a copy of the Author Contract between Snowden and HIM Holtzbrinck 37 GmbH.

**B.**    **Information Related to Snowden's Paid Speaking Engagements**

Independent of its discovery on Snowden, the United States attempted to obtain relevant information pertaining to Snowden's paid speaking engagements from American Program Bureau ("APB") and an affiliated entity Open Mic Productions ("Open Mic"), which the United States understood from publicly available sources were involved in arranging and collecting payment for a significant number of Snowden's public speeches. Accordingly, on January 31, 2020, shortly after discovery commenced—and in parallel with preparing its discovery requests to obtain similar information directly from Snowden—the United States contacted APB to request that it voluntarily provide the Government with information regarding Snowden's speeches, including his earnings from those speeches.

Although APB initially indicated a willingness to furnish the requested information, lengthy negotiations failed to yield the voluntary production of any information. Accordingly, on May 4, 2020, the United States served APB with a third-party subpoena for the production of documents, pursuant to Federal Rule of Civil Procedure 45(a)(1)(A)(iii). PEX 7. On June 4, 2020, APB filed a motion to quash or modify the subpoena in U.S. District Court for the District of Massachusetts, and on June 5, 2020, the United States cross-moved to compel partial compliance with the subpoena. *See American Program Bureau v. United States*, 1:20-mc-91250 (D. Mass), Dkt. Nos. 1, 8-9. APB's motion currently remains pending, but, at the encouragement of the Massachusetts court, APB made an initial production of materials on June 15, 2020, and supplemental productions on June 19, June 23, and June 26, 2020, that cumulatively satisfy the United States' motion for partial compliance. *See American Program Bureau v. United States*, 1:20-mc-91250 (D. Mass), Dkt. No. 22 (the United States' Status Report, filed on June 24, 2020).

Specifically, as of the date of this filing, APB has produced to the United States, pursuant

to the terms of a Protective Order entered in the District of Massachusetts, *see id.* Dkt. No. 7, the

following materials:

- A spreadsheet, authenticated by the Declaration of APB President and Chief Executive Officer Robert P. Walker (respectively, the "APB spreadsheet" and the "Walker Declaration"). PEX 8.The APB spreadsheet lists 67 speaking engagements made by Snowden and booked either by APB or Open Mic, and for each, lists (a) the date of the engagement; (b) the name of the host organization who contracted for the engagement; (c) the amount paid to APB or Open Mic for the engagement; (d) the "speaker honorarium" reflecting the amount payable to Snowden; (e) the commission payable to APB or Open Mic; and (f) the geographic location of each engagement. *Id.* [1]

- 67 contracts between APB and host organizations pertaining to speeches by Snowden.

- 11 emails containing hyperlinks to video recordings of Snowden's speeches.

- 14 MP4 files of recordings of Snowden's speeches.

- Tax forms 1099 and/or 1096 for the years 2016-2019.

Notwithstanding that the date range specified by the United States' subpoena was January

1, 2013 through present, the earliest speech reflected in APB's production occurred on

September 16, 2015. *See* PEX 8. However, publicly available sources indicate that Snowden

participated in numerous additional speaking engagements between his departure from the

United States in the spring of 2013 and the first speech that APB appears to have arranged on his

behalf, in September 2015. Additionally, publicly available information reflects that Snowden

has participated in speaking engagements after September 2015 that are not represented in APB's

production and as to which APB may have had no involvement. Further, the limited recordings

---

[1] PEX 8, attached hereto, is the version of the Walker Declaration and APB spreadsheet that APB filed on the public docket in the District of Massachusetts, and redacts—pursuant to APB's interpretation of the Protective Order entered by the District of Massachusetts—categories (b) through (e), as specified above. APB produced an unredacted version of the spreadsheet directly to the United States, which the United States used both in its efforts to locate additional public information relating Snowden's speeches, and also in formulating its requested sanctions.

and hyperlinks to video recordings of Snowden's speeches produced to the United States by APB do not reflect the full corpus of Snowden's speeches of which the United States is aware.

In parallel with these efforts to obtain information from APB, the United States has searched for additional publicly available information pertaining to Snowden's speaking engagements, and it has used the information supplied by APB to support these efforts. As of the date of this filing, the United States has located at least some information—portions of which it has organized in its own composite spreadsheet attached hereto as PEX 9 ("United States' spreadsheet")[2]—regarding a total of 100 speaking engagements conducted by Snowden. Of these, the APB spreadsheet documents that Snowden was paid for at least 67 of his speaking engagements, and the United States has further used the APB spreadsheet to calculate the median amount of his earnings per speech, among these 67 speeches ("Snowden's median speech earnings").[3]

Separately, the United States has also determined that Snowden has displayed slides or other visual aids that were marked and purported on their face to be classified in the course of at least 12 of his speaking engagements, out of 39 speeches for which the United States was able to find or obtain a recording, and determine whether such slides or visual aids were used. *See* PEX

---

[2] Where the United States' spreadsheet imports data supplied by APB but designated by APB as confidential, pursuant to the Protective Order entered by the District of Massachusetts, the United States has redacted such information in its publicly-filed version of this spreadsheet. The United States disagrees that that name the of the host organization for a given speech, as well as the amount that Snowden was paid to give the speech, are properly designated as confidential. The United States takes no position on whether the gross amount paid for the speech, or APB's net profit, have been properly designated as confidential. Because all redactions are made pursuant to APB's designations, under Local Civil Rule 5, the burden is on APB to justify the sealing and redaction of each of these categories of information.

[3] Because APB has deemed the amounts that Snowden has received in payment for the speeches which APB brokered on his behalf to be protected information under the relevant Protective Order pursuant to which this information was produced, the United States cannot publicly disclose this calculation in this filing.

9. Thus, out of the subset of speeches for which the United States has reviewed a recording, Snowden used displayed slides or other visual aids that were marked and purported on their face to be classified approximately 31% of the time.[4] However, the United States has been unable to locate any recording of an additional 61 speeches or speaking engagements, *see id.*, and thus is presently unable to determine the contents of those speeches.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 37(d)(1)(A) "allows the court to impose certain sanctions on a party who fails to respond to interrogatories; fails to respond to a request for inspection; or fails to appear for properly noticed depositions." *Mackin v. Charles Schwab & Co.*, No. CV DKC 16-3923, 2019 WL 127364, at *2 (D. Md. Jan. 8, 2019). "Unlike where a party provides inadequate or incomplete discovery responses, Rule 37(d) allows for the imposition of sanctions, including dismissal or entry of default, even when the noncomplying party has not violated a court order." *Id.*; *Wysocki v. Dourian*, No. 2:17-CV-00333JADNJK, 2017 WL 3996398, at *2 (D. Nev. Sept. 11, 2017) ("Issuance and violation of a discovery order is not a prerequisite to the imposition of sanctions …. Instead, the Court may impose sanctions on a party who, *inter alia*, fails to respond to properly served interrogatories or requests for production."); Charles Alan Wright, et al., Fed. Prac. & P. § 2291 (3d ed. 2018) ("No court order is required to bring Rule 37(d) into play. It is enough that a notice of the taking of a deposition or a set of interrogatories or a request for inspection has been properly served on the party.").

Rule 37 sanctions must be applied diligently," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980), "both as a matter of justice in the individual case and 'to deter others who might be tempted to similar conduct,'" *Lee v. Max Int'l*, 638 F.3d 1318, 1320 (10th Cir. 2011)

---

[4] 12 / 39 = 31%, as rounded up to the nearest percent.

(Gorsuch, J.) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643

(1976). The sanctions available under Rule 37(d) "may include any of the orders listed in Rule

37(b)(2)(A)(i)-(iv)," Fed. R. Civ. P. 37(d)(3), which in turn include, *inter alia*, an order "directing

that … designated facts be taken as established for purposes of the action, as the prevailing party

claims," and/or "prohibiting the disobedient party from supporting or opposing designated claims

or defenses, or from introducing designated matters in evidence," Fed. R. Civ. P. 37(b)(2)(A)(i)-

(ii). However, the sanctions enumerated in Section (b)(2)(A)(i)-(iv) "are not exclusive and

arbitrary but flexible, selective, and plural. The district court may, within reason, use as many

and as varied sanctions as are necessary to hold the scales of justice even." *Zornes v. Specialty

Indus., Inc.*, 166 F.3d 1212 (4th Cir. 1998) (Table); *see also*, *e.g.*, *Mojarad v. Aguirre,* No.

CIV.A.05–0038, 2006 WL 785415, at *10 (D.D.C. Mar. 27, 2006) (observing that the list of

sanctions enumerated in Rule 37(b)(2)(A) is neither exhaustive nor mutually exclusive); *Law

Funder, LLC v. Munoz*, No. 7:14-CV-00981, 2016 WL 8461423, at *2 n.14 (S.D. Tex. Dec. 9,

2016), *aff'd sub nom. Law Funder, L.L.C. v. Munoz*, 924 F.3d 753 (5th Cir. 2019), *as

revised* (June 6, 2019) (same, and collecting cases).

A district court holds "wide discretion" in fashioning and imposing sanctions under Rule

37. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989);

*see also*, *e.g.*, *Wegener v. Johnson,* 527 F.3d 687, 692 (8th Cir. 2008) ("When a party fails to

provide information . . . , the district court has wide discretion to fashion a remedy or sanction as

appropriate for the particular circumstances of the case."). However, this discretion is not

"'without bounds or limits.'" *Carney v. KMart Corp.,* 176 F.R.D. 227 (S.D. W. Va. 1997)

(*quoting Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir.1995)). The Fourth

Circuit has "developed a four-part test for a district court to use when determining what sanctions

to impose" under Rule 37(b)(2)(A). *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305,

348 (4th Cir. 2001); *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592,

597 (4th Cir. 2003). The court must consider: "(1) whether the non-complying party acted in bad

faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for

deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would

have been effective." *Belk*, 269 F.3d at 348.

## ARGUMENT

### I.      The Court Should Impose Sanctions Against Snowden.

The circumstances presented by this motion amply justify the imposition of appropriate

sanctions against Snowden, in consequence of his blanket refusal to engage in civil discovery.

The Court has already determined that Snowden is liable to the United States on both the

*Permanent Record* claim and the speeches claim. *Snowden*, 2019 WL 8333546, at *6.

Accordingly, all that remains to be determined in this case is the universe of speeches that fall

within the Court's ruling on the speeches claim and the entry of appropriate remedies in the

United States' favor on these claims. Consistent with well-established Supreme Court precedent,

the United States is entitled to a constructive trust over all of the profits earned by Snowden

stemming from his unauthorized disclosures—including both any profits earned in conjunction

with the publication of *Permanent Record*, as well as those stemming from any and all

unauthorized paid speeches he has given in violation of his Secrecy Agreements. *See Snepp v.*

*United States*, 444 U.S. 507, 515-16 (1980) (explaining that the imposition of a constructive trust

is the proper remedy for a breach of a Secrecy Agreement, because it "simply requires" the

person who violated such an agreement "to disgorge the benefits of his faithlessness.").

With respect to the *Permanent Record* claim, the United States has succeeded in

obtaining a copy of the Author Contract between Snowden and his publisher, which discloses, *inter alia*, the amount of the advance fee that Snowden was paid to write his book. The United States intends to use this information to seek the imposition of both a constructive trust that would hold Snowden liable to the United States for the full amount of this advance fee, as well as any future royalties that Snowden may earn pursuant to his Author Contract, and a judgment for the monetary damages presently known to the United States. However, in light of Snowden's failure to respond to its discovery requests pertaining to the book, the United States requests as a sanction that the Court prohibit Snowden from introducing, at any stage of this case, any rebuttal evidence relating to his compensation for *Permanent Record*. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).

The United States also requests that the Court appropriately sanction Snowden for his failure to provide the United States with any information responsive to its discovery requests pertaining to his paid speeches. As this Court has already held, Snowden is liable to the United States for any speeches he has given in violation of his non-disclosure obligations. *Snowden*, 2019 WL 8333546, at *6. In order to obtain relief on the speeches claim, the United States sought certain information regarding Snowden's paid speaking engagements, including their respective subjects and contents were, and how much Snowden was paid for each speech. As detailed above, the United States has attempted to obtain such information from other sources, including through its third party subpoena on, and motion practice against, APB, as well as through extensive—and time-consuming—searches for additional publicly available sources. However, notwithstanding these substantial efforts, as a result of Snowden's blanket refusal to comply with his civil discovery obligations, the United States lacks information on these subjects. In these circumstances, the United States respectfully requests that the Court:

- Deem all information set forth in the APB spreadsheet as established facts for purposes of this action. *See* Fed. R. Civ. P. 37(b)(2)(A)(i).

- For every speech or speaking engagement for which Snowden is liable to the United States under Count Two, but for which the United States lacks evidence of how much Snowden was paid, deem as established that Snowden was paid his median speech earnings, as calculated by the subset of speeches documented in the APB spreadsheet. *See* Fed. R. Civ. P. 37(b)(2)(A)(i).

- Prohibit Snowden from introducing, at any stage of this case, any additional evidence relating to whether any given speech referred to intelligence-related activities of the CIA or NSA, materials that purport to be classified, or information that is or was in the process of a classification determination; or whether during the speech Snowden displayed any material that was marked and purported on its face to be classified; and how much Snowden was paid for each speech. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).

- For the subset of 61 speeches as to which the United States has been unable to locate any public recording or transcription, deem as established that in at least 31% of them[5]—*i.e.*, in at least 19 of these speeches—he displayed slides or other visual aids. *See* Fed. R. Civ. P. 37(b)(2)(A)(i).[6]

Application of the *Belk* factors amply supports the imposition of these narrowly tailored

sanctions. The first such factor, "whether the non-complying party acted in bad faith," 269 F.3d

at 348, is plainly satisfied here, where Snowden, against the advice of counsel, outright refused

to comply with his civil discovery obligations. "[T]he basic philosophy" underlying civil

discovery is "that prior to trial every party to a civil action is entitled to the disclosure of all

relevant information in the possession of any person, unless the information is privileged."

*Dublin Eye Assocs., P.C. v. Massachusetts Mut. Life Ins. Co.*, No. 5:11-CV-128-KSF, 2013 WL

653539, at *6 (E.D. Ky. Jan. 11, 2013) (quoting 8 Charles Wright & Arthur Miller, *Federal*

---

[5] As explained above, *see supra* p. 8-9, the United States has determined that Snowden has displayed slides or other visual aids that were marked and purported on their face to be classified in the course of at least 12 of his speaking engagements, out of 39 speeches for which the United States was able to find or obtain a recording and determine whether such slides or visual aids were used—*i.e.*, 31% of the time, out of this relevant subset.

[6] By highlighting the speeches were Snowden violated his Secrecy Agreements through the display of slides with overt classification markings, the United States is not conceding (impliedly or otherwise) that other speeches did not implicate his obligations under the Secrecy Agreements.

*Practice & Procedure* § 2001 (3d ed. 2010)); *accord Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."). "Parties must respond truthfully, fully, and completely to discovery or explain truthfully, fully, and completely why they cannot respond." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014), *aff'd sub nom. Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118 (4th Cir. 2019). Snowden's outright refusal to participate in discovery or to furnish the United States with information responsive to *any* of its discovery requests—including those as to which he interposed no objections—plainly evinces both an utter disregard for the federal judicial process, as well as bad faith within the meaning of the *Belk* test. *See, e.g.*, *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92-93 (4th Cir. 1989) (upholding the district court's finding "that the defendants had acted in bad faith by both their noncompliance and their haphazard compliance" with their discovery obligations); *McFeeley v. Jackson St. Entm't, LLC*, No. CIV.A. DKC 12-1019, 2014 WL 4182231, at *2 (D. Md. Aug. 19, 2014) ("Ms. Gray's complete unresponsiveness in this case, without any justification or excuse, is enough to presume bad faith.").

The second *Belk* factor, "the amount of prejudice that noncompliance caused the adversary," 269 F.3d at 348, likewise aligns with the requested sanctions. As the Fourth Circuit has explained, this factor "necessarily includes an inquiry into the materiality of the evidence [the noncompliant party] failed to produce." *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 93. Here, because the Court has already determined that Snowden is liable to the United States on the speeches claim, *Snowden*, 2019 WL 8333546, at *6, all that remains to be determined is the remedy to which the United States is entitled as to this claim. In order to support that remedy, the United States sought information regarding, *inter alia*, the number of paid speeches Snowden has

given; the contents of each speech; whether the speech referred to intelligence-related activities of the CIA or NSA, or materials that purport to be classified, or information that is or was in the process of a classification determination; whether during the speech Snowden displayed any material that was marked and purported on its face to be classified; and how much Snowden was paid for each speech. In contravention of Snowden's clear obligation to participate in the discovery process, he outright refused to provide any information.

Although the United States was able to fill some of the gaps caused by Snowden's intransigence through its laborious engagement with APB and extensive searches of publicly available sources, absent imposition of the requested sanctions, it still lacks the information it seeks to obtain a remedy on this claim and thus is   prejudiced by Snowden's conduct and entitled to  an appropriate sanction. *See Middlebrooks v. Sebelius*, Civ. No. PJM 04-2792, 2009 WL 2514111, at *3 (D. Md. Aug. 13, 2009) (holding that sanctions were appropriate where information was "not otherwise available" except "from the opposing party"); *cf. United States v. One Tract of Real Property,* 107 F.3d 868, 1997 WL 71719, at *3 (4th Cir. 1997) (upholding the sanction of dismissal, where the plaintiff's "repeated refusals to comply with the government's legitimate discovery requests ... was prejudicial to the government ... because it could not defend against claims, facts, and witnesses that [the appellant] refused to provide."); *Lance v. Megabus Northeast, LLC*, Case No. PWG-16-3459, 2017 WL 3480800, at *3 (D. Md. Aug. 14, 2017) (finding that defendant was prejudiced by plaintiff's refusal to produce evidence at the heart of his claim and concluding that plaintiff's "failure to answer even a single interrogatory precludes Defendant from preparing a defense").

For similar reasons, the third *Belk* factor, "the need for deterrence of the particular sort of non-compliance" at issue, is likewise satisfied. 269 F.3d at 348. The purpose of Rule 37

sanctions is to both "penalize those whose conduct may be deemed to warrant such a sanction,

[and] to deter those who might be tempted to such conduct in the absence of such a deterrent."

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980); *see also*, *e.g.*, *Victor Stanley, Inc.*

*v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533-34 (D. Md. 2010) (noting that Rule 37 sanctions serve

"both normative ... and compensatory" functions); *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734

F.3d 366, 376 (4th Cir. 2013) (observing that the imposition of sanctions is sometimes required

"to preserve the integrity of the judicial process in order to retain confidence that the process

works to uncover the truth.") (citation omitted). Here, Snowden "has not just dragged his feet in

discovery or been slow to produce responses," but "[r]ather[] [has] willfully and consistently

stood in complete defiance" of the Federal Rules of Civil Procedure and his civil discovery

obligations. *Hosch v. BAE Sys. Info. Sols., Inc.*, No. 1:13-CV-00825 AJT, 2014 WL 1681694, at

*6 (E.D. Va. Apr. 24, 2014) (Trenga, J., adopting the Report & Recommendation of Buchanan,

M.J.). In such circumstances, "it would send the wrong message to recalcitrant parties and their

counsel if such defiance went unpunished. Thus, the need to deter this sort of conduct is great."

*Id.*; *see also*, *e.g.*, *Stephens v. U.S. Bank Nat'l Ass'n*, No. DKC 15-1780, 2016 WL 6433183, at

*2 (D. Md. Oct. 31, 2016) ("A complete failure to participate in discovery prejudices the other

party to an extreme degree, and such noncompliance must be deterred.").

   Fourth and finally, lesser sanctions would not be effective. *Belk*, 269 F.3d at 348. To the

contrary, as demonstrated above, the United States has gone to great lengths and diverted

substantial resources in order to mitigate the prejudice it has suffered as a direct result of

Snowden's noncompliance. The requested sanctions account for the mitigation that the United

States was able to achieve through these efforts. They are also narrow, targeted, and do no more

than minimally "level[] the evidentiary playing field" that has been distorted by Snowden's obstruction. *Vodusek*, 71 F.3d at 156.

Accordingly, for all of the reasons set forth above, the Court should enter the requested sanctions against Snowden.

**<u>CONCLUSION</u>**

For the reasons set forth above, the Court should enter the requested sanction, or at minimum compel Snowden to provide complete responses to the United States' discovery requests.

Dated: July 10, 2020                 Respectfully Submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID MORRELL
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

ANTONIA KONKOLY
Trial Attorney
SERENA ORLOFF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 11110
Washington, DC 20530
Tel.:    (202) 514-2395
Fax:    (202) 616-8470
Email:  <u>antonia.konkoly@usdoj.gov</u>

_____/s/ Lauren A. Wetzler_____
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:      (703) 299-3752
Fax:      (703) 299-3983
Email:   Lauren.Wetzler@usdoj.gov

*Counsel for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2020, the foregoing document was filed via the

Court's CM/ECF system, which will automatically serve and send email notification of

such filing to all registered attorneys of record.


_____*/s/ Lauren A. Wetzler*_____
LAUREN A. WETZLER