**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| EDWARD SNOWDEN, | ) Civil Action No. 1:19-cv-1197 (LO/TCB) |
| Defendant, | ) |
| and | ) |
| MACMILLAN PUBLISHING GROUP, LLC d/b/a HENRY HOLT AND COMPANY, *et al.*, | ) |
| Relief-Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff the United States of America's ("Plaintiff" or "United States") Motion to Sanction Edward Snowden for his Refusal to Participate in Civil Discovery (Dkt. 101). For the reasons articulated below, Plaintiff's motion is granted.

I. BACKGROUND

**A.   The Litigation**

The United States filed this lawsuit in September of 2019 against Defendant Edward Snowden ("Defendant" or "Snowden") based on the publication of his book, *Permanent Record*, and his delivery of intelligence-related speeches. (*See generally* Dkt. 1.) Plaintiff alleged that Snowden failed to submit *Permanent Record* and other intelligence-related material to the United States for prepublication review, and the resulting public disclosures violated Secrecy Agreements Snowden signed with the Central Intelligence Agency ("CIA") and the National

1

Security Agency ("NSA").

On December 17, 2019, the Court granted the United States' motion for partial summary judgment as to liability on Counts I (*Permanent Record*) and II (speeches). (*See* Dkt. 63 at 12 ("The Government is entitled to summary judgment as to liability on Count I because *Permanent Record* contains information and materials which Snowden was required to submit for prepublication review."); *id.* at 13 ("The Government is entitled to summary judgment as to liability on the breach of contract claim in Count 2 because the comments and displays contain information and materials Snowden was required to submit for prepublication review.").)[1] Because the United States only moved for summary judgment as to liability, the Court's opinion did not address the appropriate remedies for Snowden's violations. The United States now seeks to recover the proceeds Snowden earned from his unauthorized intelligence-related disclosures.

**B. Discovery**

Shortly after the Court granted summary judgment as to liability, the Court entered a scheduling order and discovery commenced. (Dkt. 67.) The parties filed a Joint Proposed Discovery Plan on February 12, 2020 which the Court adopted on February 13, 2020. (Dkts. 77-78.)

Plaintiff served Snowden with eight interrogatories and twelve requests for production of documents. (Dkts. 102-1, 102-2.) Of relevance here, the United States sought information and documents pertaining to payment Snowden received "for or in conjunction with *Permanent Record*; his exercise of any subsidiary rights related to that book; any notes or outlines prepared in conjunction with his paid speaking engagements; any intelligence-related materials that he discussed, used, or displayed in conjunction with or in the course of his paid speaking

---

[1] *United States v. Snowden*, No. 1:19-cv-1197, __ F. Supp. 3d __, 2019 WL 8333546 (E.D. Va. Dec. 17, 2019).

engagements; any audio or video recordings, or written transcriptions of, his paid speaking engagements; written summaries of the contents of his paid speaking engagements, particularly as those contents pertained to any intelligence-related matters; and information regarding Snowden's financial compensation for his paid speaking engagements." (Dkt. 102 at 3-4; *see also* Dkts. 102-1 at 6-8; 102-2 at 7-9.)

After obtaining a brief extension of time to respond from the Court, Snowden timely served objections to some, but not all, of the United States' interrogatories and requests for production. (Dkts. 102-3, 102-4.) When Snowden's substantive discovery responses were due, Snowden informed the United States via counsel that he was declining to participate in discovery. (Dkt. 102-5 at 3 (Email from counsel: "I write to communicate that, contrary to the advice of his counsel, Mr. Snowden is declining to provide answers to the government's discovery requests at this time.").)

### C. The United States' Efforts to Obtain Discovery from Third Parties

The United States turned to third parties to obtain information regarding *Permanent Record* and Snowden's speaking engagements.

#### 1. Permanent Record

Of relevance here, the United States named Macmillan Publishing Group, LLC ("Macmillan"), Verlagsgruppe Georg von Holtzbrinck GmbH, and HIM Holtzbrink 37 GmbH (collectively, "Relief-Defendants") as relief-defendants in this matter because they are the entities responsible for the publication and distribution of *Permanent Record*. The Court entered a Stipulation and Protective Order between the United States and Macmillan on October 30, 2019. (Dkt. 29.) Under that Protective Order, Macmillan provided the United States with a copy of the Author Contract between Snowden and HIM Holtzbrinck 37 GmbH. That contract

discloses the amount of the advance fee Snowden received to write *Permanent Record*.

2. *Snowden's Speaking Engagements*

Obtaining information about Snowden's speaking engagements proved more difficult. The United States understood from publicly available sources that the American Program Bureau ("APB") and an affiliated entity, Open Mic Productions ("Open Mic") were involved in arranging and collecting payment for a number of Snowden's public speeches. The United States therefore contacted APB in January of 2020 to request relevant information. After lengthy negotiations broke down, in March of 2020, the United States served APB with a third-party subpoena for the production of documents pursuant to Federal Rule of Civil Procedure 45(a)(1)(A)(iii). (Dkt. 102-7.) On June 4, 2020, APB moved to quash or modify that subpoena in the U.S. District Court for the District of Massachusetts, and the United States cross-moved to compel partial compliance with the subpoena.² Then, "at the encouragement of the Massachusetts court, APB made an initial production of materials on June 15, 2020, and supplemental productions on June 19, June 23, and June 26, 2020, that cumulatively satisf[ied] the United States' motion for partial compliance."³ (Dkt. 102 at 6.) APB produced material pursuant to a Protective Order entered in the District of Massachusetts. Specifically, APB produced:

---

² *See Am. Program Bureau, Inc. v. United States*, 1:20-mc-91250-NMG (D. Mass).

³ On July 14, 2020, the District of Massachusetts entered an electronic order (*i.e.*, a docket entry) "finding as moot" the motion to quash and the motion to compel. That Order states that "Counsel for Mr. Snowden has indicated to counsel for APB that Mr. Snowden will not object to the admissibility of the spreadsheet if it is offered into evidence by the Government in the underlying civil action pending in the Eastern District of Virginia." *Am. Program Bureau, Inc. v. United States*, 1:20-mc-91250-NMG (D. Mass) (Dkt. 26). As such, the court found that "APB has provided the material in its possession, custody, or control responsive to satisfy its obligations," and deemed "APB's subpoena obligations to be satisfied." (*Id.*)

- A spreadsheet authenticated by the Declaration of APB President and Chief Executive Officer Robert P. Walker ("the APB Spreadsheet"). The ABP Spreadsheet lists 67 speaking engagements by Snowden that APB or Open Mic booked. Further, the APB Spreadsheet lists (1) the date of the engagement, (2) the name of the host organization who contracted for the engagement, (3) the amount paid to APB or Open Mic for the engagement, (4) the "speaker honorarium" (*i.e.*, the amount payable to Snowden), (5) the commission payable to APB or Open Mic, and (5) the geographic location of each engagement (Dkt. 102-8);[4]

- 67 contracts between APB and host organizations pertaining to Snowden's speeches;

- 11 emails containing hyperlinks to video recordings of Snowden's speeches;

- 14 MP4 files of recordings of Snowden's speeches; and

- Tax forms 1099 and/or 1096 for the years 2016 through 2019.

(Dkt. 102 at 7.)

Even though the date range specified by the subpoena started on January 1, 2013, the earliest speech disclosed by APB's document production occurred on September 16, 2015. (*See* Dkt. 102-8.) However, according to publicly available sources, Snowden participated in speaking engagements—occurring before and after those identified by APB—that are not reflected in the APB Spreadsheet and which APB may not have been involved with. As a result, the United States searched publicly available sources to compile more information regarding Snowden's speeches.[5] In total, the United States found 100 speeches. Of those 100 speeches, the United

---

[4] Portions of the APB Spreadsheet are redacted pursuant to the Protective Order entered by the District of Massachusetts. The United States filed an unredacted version of the APB Spreadsheet under seal for the Court's review. The Court will address this sealing in a separate order.

[5] The United States created its own spreadsheet ("USA Spreadsheet"), which compiles information from the APB Spreadsheet and its own research. (Dkt. 102-9.) The redacted information in the APB Spreadsheet is also redacted in the USA Spreadsheet. The United States also filed an unredacted version of the USA Spreadsheet under seal for the Court's review. The Court will address this sealing in a separate order.

States is aware that Snowden received compensation for 67 of them—those identified in the APB Spreadsheet. From this information, the United States has calculated the median amount of Snowden's earnings per speech.

Further, the United States found or obtained recordings of 39 speeches. Of those 39 speeches, the United States determined that Snowden used slides or other visual aids "that were marked or purported on their face to be classified" in at least 12 of those speaking engagements. (Dkt. 102 at 8; *see also* Dkt. 102-9 (last column on the right).) Out of this subset of speeches, the United States determined that Snowden used slides or other visual aids that were marked or purported on their face to be classified approximately 31% of the time. The United States has been unable to locate recordings of the other 61 speeches of which it is currently aware.

### D. The Instant Motion

On July 10, 2020, Plaintiff filed the instant motion for sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(ii) and (b)(2)(A). (Dkt. 101.) Defendant filed a response stating that he "does not oppose the Motion of the United States to Sanction Edward Snowden for his Refusal to Participate in Civil Discovery or the specific sanctions set forth by the Government in that motion." (Dkt. 109.) As such, the United States did not file a reply, and the motion is ripe for disposition.

### II. ANALYSIS

Under Federal Rule of Civil Procedure 37(d)(1)(A)(ii), a court may impose discovery sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). Such discovery sanctions are permissible even if the noncomplying party has not violated a previous court order. *Mackin v. Charles Schwab & Co.*, No. DKC 16-3923,

2019 WL 127364, at *2 (D. Md. Jan. 8, 2019). Here, the relevant discovery sanctions available include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; [and]
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii), (d)(3). The Fourth Circuit has noted that the sanctions listed under Rule 37(b) are not exclusive; rather, district courts have wide discretion to fashion remedies that fit the circumstances of the case and promote a just outcome. *See Zornes v. Specialty Indus., Inc.*, 166 F.3d 1212 (4th Cir. 1998) (Table) (citation omitted) (reviewing discovery sanctions for abuse of discretion); *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

Of course, a district court's discretion is not limitless. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (citation omitted). The Fourth Circuit requires district courts to consider a four-part test when determining appropriate discovery sanctions. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001); *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). District courts must consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Belk*, 269 F.3d at 348.

### A. Requested Sanctions

It is first useful to recapitulate the United States' requested sanctions as they pertain to each Count in the Amended Complaint.

1. <u>Permanent Record *(Count I)*</u>

As explained above, the United States obtained a copy of the Author Contract which discloses the advance fee Snowden received for writing *Permanent Record*. At the remedial phase of this litigation, the United States "intends to use this information to seek the imposition of both a constructive trust that would hold Snowden liable to the United States for the full amount of the advance fee, as well as any future royalties that Snowden may earn pursuant to his Author Contract, and a judgment for the monetary damages presently known to the United States." (Dkt. 102 at 12.) Accordingly, as to Count I, the United States seeks to prohibit Snowden from introducing any rebuttal evidence, at any stage in this case, relating to his compensation for *Permanent Record* under Rule 37(b)(2)(A)(ii).

2. <u>*Speeches (Count II)*</u>

Because of Snowden's wholesale refusal to respond to discovery and the resulting difficulties in obtaining information from third parties regarding Snowden's speaking engagements, there are resulting gaps in knowledge. The United States seeks to remedy those gaps to obtain an appropriate remedy under Count II. As such, the United States requests that the Court impose the following sanctions:

- The Court deems all information set forth in the APB Spreadsheet as established facts for purposes of this action (Rule 37(b)(2)(A)(i));

- For every speech or speaking engagement for which Snowden is liable to the United States under Count Two, but for which the United States lacks evidence of how much Snowden was paid, the Court deems as established that Snowden was paid his median speech earnings, as calculated by the subset of speeches documented in the APB Spreadsheet (Rule

37(b)(2)(A)(i));

- The Court prohibits Snowden from introducing, at any stage of this case, any evidence relating to whether any given speech referred to intelligence-related activities of the CIA or NSA, materials that purport to be classified, or information that is or was in the process of a classification determination; or whether during the speech Snowden displayed any material that was marked and purported on its face to be classified; and how much Snowden was paid for each speech (Rule 37(b)(2)(A)(ii));

- For the subset of 61 speeches as to which the United States has been unable to locate any public recording or transcription, the Court deems as established that in at least 31% of them—*i.e.,* in at least 19 of these speeches—he displayed slides or other visual aids (Rule 37(b)(2)(A)(i)).

(Dkt. 101-1.)

### B. The *Belk* Test

The Court will next consider the Fourth Circuit's four-part test to determine whether the United States' requested sanctions are appropriate.

#### 1. *Bad Faith*

Acting in bad faith encompasses a party's disregard of its obligations under the Federal Rules of Civil Procedure and willful conduct where the party "clearly should have understood [its] duty to the court but nonetheless deliberately disregarded it." *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10cv1011 (LMB/JFA), 2011 WL 2560096, at *7 (E.D. Va. June 3, 2011), *report and recommendation adopted*, 2011 WL 2559806 (E.D. Va. June 27, 2011) (internal quotation marks and citation omitted).

Here, the Court finds that Snowden (1) understood his civil discovery duties to Plaintiff and the Court under the Federal Rules of Civil Procedure and (2) disregarded them. First, Snowden's understanding of his obligations is apparent from the record before the Court. Snowden filed a consent motion requesting that the Court grant "a brief extension of time for him to object and respond to interrogatories and requests for production served upon him by the

United States." (Dkt. 86.) As noted above, Snowden then served objections to some (but not all) of the United States' discovery requests. (*See* Dkts. 102-3 (objections to interrogatories), 102-4 (objections to requests for production of documents).) This demonstrates that Snowden was aware of the United States' discovery requests, his obligation to respond, and the time in which to respond under Rules 33 and 34.

Second, it is equally clear that Snowden deliberately disregarded his obligations. In an email from counsel, Snowden stated that he was "declining to provide answers to the government's discovery requests at this time." (Dkt. 102-5.) Snowden declined to provide answers "contrary to the advice of his counsel," indicating that his counsel explained the repercussions of his failure to respond. Moreover, Snowden is aware of the United States' instant motion for sanctions; his response states that "he does not oppose the Motion of the United States to Sanction Edward Snowden for his Refusal to Participate in Civil Discovery or the specific sanctions set forth by the Government in that motion." (Dkt. 109.) The Court must conclude that because Snowden outrightly refused to participate in civil discovery despite contrary advice from counsel and an understanding of the repercussions, Snowden has unequivocally acted in bad faith.

2. *Prejudice*

Next, the Court finds that Snowden's actions have severely prejudiced Plaintiff. In this inquiry, the Court considers the "materiality of the evidence" that the noncomplying party failed to produce. *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2 at 92. Here, the United States argues that even though it was able to obtain information regarding Snowden's violative speeches through its "laborious engagement with APB and extensive searches of publicly available sources, . . . it still lacks the information it seeks to obtain a remedy on this claim and thus is prejudiced by

Snowden's conduct." (Dkt. 102 at 15.) The Court agrees. The information regarding the full corpus of Snowden's speeches—including his notes or outlines; the intelligence-related material he discussed, used, or displayed; any audio or video recordings, written transcriptions or summaries; and the compensation he received—would enable the United States to precisely seek a remedy from this Court. But because of Snowden's blanket refusal to participate in discovery, the United States is unable to do so. This lack of information prejudices Plaintiff.

### 3. *Need for Deterrence*

There is no question as to the vital role discovery plays in the resolution of civil litigation. Discovery allows the parties to seek the truth and allows courts to ultimately resolve disputes on the merits and compensate parties accordingly. In light of the prejudice the United States faces by Snowden's noncompliance, as discussed above, the undersigned also finds that such behavior is in need of deterrence. *See, e.g., Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014) ("Continued contumacious behavior and abuse of the Courts . . . cannot be tolerated. And with discovery's important role in modern litigation, deterrence is greatly needed."). Indeed, not sanctioning Snowden in this matter would undermine the integrity of the judicial process, signal to Snowden that his noncompliance is acceptable, and perhaps encourage other recalcitrant parties not to comply with their discovery obligations.

### 4. *Effectiveness of a Less Drastic Sanction*

Finally, the Court determines that less drastic sanctions would be ineffective. The United States correctly notes that it has gone to "great lengths" in order to "mitigate the prejudice it has suffered as a direct result of Snowden's noncompliance." (Dkt. 102 at 16.) Now, the United States seeks relief by way of tailored sanctions to fill in the evidentiary gaps Snowden created by his noncompliance. Upon review of the United States' requested sanctions—including

prohibiting Snowden from introducing rebuttal evidence and deeming certain facts as established—the Court finds that such sanctions level the evidentiary playing field and that lesser sanctions (such as fines) would be inadequate to remedy the prejudice to Plaintiff. *Cf. Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590-95 (4th Cir. 2001) (affirming a district court's imposition of sanctions "for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct").

In conclusion, upon consideration of the four factors in the Fourth Circuit's *Belk* test, the Court is satisfied that the proposed sanctions here are appropriate, tailored, and will allow the United States to seek a proper remedy in the remedial phase of this litigation.

### III. ORDER

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Sanction Edward Snowden for His Refusal to Participate in Civil Discovery (Dkt. 101) is **GRANTED**. It is further **ORDERED** as follows:

(1) The Court prohibits Snowden from introducing, at any stage of this case, any rebuttal evidence relating to his compensation for *Permanent Record*.

(2) The Court deems all information set forth in the APB Spreadsheet as established facts for purposes of this action.

(3) For every speech or speaking engagement for which Snowden is liable to the United States under Count Two, but for which the United States lacks evidence of how much Snowden was paid, the Court deems as established that Snowden was paid his median speech earnings, as calculated by the subset of speeches documented in the APB Spreadsheet.

(4) The Court prohibits Snowden from introducing, at any stage of this case, any evidence relating to whether any given speech referred to intelligence-related activities of the CIA or NSA, materials that purport to be classified, or information that is or was in the process of a classification determination; or whether during the speech Snowden displayed any material that was marked and purported on its face to be classified; and how much Snowden was paid for each speech.

(5)  For the subset of 61 speeches as to which the United States has been unable to locate any public recording or transcription, the Court deems as established that in at least 31% of them—*i.e.,* in at least 19 of these speeches—he displayed slides or other visual aids.

ENTERED this 7th day of August, 2020.

                                                       /s/
                             THERESA CARROLL BUCHANAN
                             UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia